**THE UNITED STATES DISTRICT COURT**

**DISTRICT OF UTAH**

| | |
|---|---|
| **COURTNEY T.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**FRANK BISIGNANO,**[1]<br>**Commissioner of Social Security,**<br><br>**Defendant.** | **MEMORANDUM DECISION AND ORDER**<br><br>**Case No. 2:25-cv-00019-JCB**<br><br>**Magistrate Judge Jared C. Bennett** |

**PROCEDURAL BACKGROUND**[2]

Plaintiff Courtney T. ("Plaintiff") alleges disability due to various physical and mental impairments. Commissioner of Social Security Frank Bisignano ("Commissioner") originally determined that Plaintiff was disabled and entitled to Supplemental Security Income ("SSI") under Title XVI of the Social Security Act[3] in 2009.[4] The Commissioner conducted periodic reviews of Plaintiff's entitlement to SSI, as required by 20 C.F.R. § 416.994(a). The Commissioner conducted such a review in September 2015 and continued Plaintiff's SSI.[5]

[1] Frank Bisignano is now the Commissioner of Social Security. Under Fed. R. Civ. P. 25(d), he has been substituted as the Defendant in this case. ECF No. 17.

[2] Under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, all parties have consented to Judge Jared C. Bennett conducting all proceedings in this case, including entry of final judgment. ECF No. 9.

[3] 42 U.S.C. §§ 1381-1383f.

[4] ECF No. 12, Administrative Record ("AR ___") 137, 778-92.

[5] AR 138, 823-25.

The Commissioner conducted the next review in September 2019 and determined that Plaintiff was no longer disabled.[6] After that determination was upheld on reconsideration,[7] Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ") on March 23, 2023.[8] The ALJ issued a written decision on April 11, 2023 ("2023 Decision"), concluding that Plaintiff's disability ended on September 1, 2019.[9] In that decision, the ALJ made the following findings regarding Plaintiff's dislocated left thumb.

> [Plaintiff]'s [motor vehicle accident] also resulted in several physical injuries, including a left thumb metacarpophalangeal (MCP) joint dislocation with ulnar collateral ligament tear (Ex. 1F/34).
>
> Two attempted reductions were unsuccessful (Ex. 1F/10). Although [Plaintiff] had a thumb deformity, he still had some use of it and denied any pain or concern related to the impairment at his discharge (*id*. at 8).
>
> At his psychological consultative examination in November 2009, he reported difficulty lifting because of his thumb and indicated that it remained untreated and dislocated (Ex. 3F/2-3). At his next consultative examination in August 2015, "he still ha[d] a clearly dislocated thumb from the [motor vehicle accident] that has not yet been treated" (Ex. 9F/3).
>
> Leading up to the relevant period, he complained of chronic pain in his left thumb (Ex. 12F/5). In May 2021, he still needed surgery to repair his left thumb (Ex. 19F/77).
>
> Accordingly, the undersigned finds [Plaintiff] would be limited to medium exertional work. This is consistent with the objective medical evidence discussed and cited to above, including

[6] AR 139-53.

[7] AR 227-37, 239-41.

[8] AR 80-112.

[9] AR 158-92.

> imaging showing a left thumb dislocation with a significant tear of the ulnar collateral ligament (Ex. 1F/34).
>
> Moreover, it is consistent with the observation of two psychological consultative examiners that the left thumb remained "clearly dislocated" (Ex. 3F/2; 9F/2-3). The restriction to medium exertion, while supported by the objective medical evidence, also serves as a precaution as it takes into account years of not working and likely deconditioning.[10]

Plaintiff appealed the 2023 Decision, and, on December 12, 2023, the Appeals Council vacated it because the ALJ had applied the incorrect medical evidence regulations and failed to adequately evaluate or account for the functional impact of Plaintiff's dislocated left thumb.[11] Consequently, the Appeals Council remanded this case to the ALJ and ordered the ALJ to: (1) further consider the medical opinion evidence under the correct regulations; and (2) further consider Plaintiff's residual functional capacity ("RFC") and provide appropriate rationale with specific references to record evidence in support of the assessed limitations, as required by the relevant regulations.[12]

On remand, Plaintiff appeared with counsel for another hearing before the ALJ on August 8, 2024.[13] The ALJ issued a written decision on August 29, 2024 ("2024 Decision"), again determining that Plaintiff's disability ended on September 1, 2019.[14] More specifically, after conducting the required seven-step evaluation process for determining whether to terminate Plaintiff's SSI, which will be outlined below, the ALJ determined that, as of September 1, 2019,

---

[10] AR 180-81 (fourth alteration in original).

[11] AR 195-97.

[12] AR 196.

[13] AR 51-79.

[14] AR 7-43.

Plaintiff had experienced medical improvement related to his ability to work.[15] The ALJ also determined that Plaintiff had the following RFC:

> Since September 1, 2019, based on the current impairments, [Plaintiff] has had the [RFC] to perform light work as defined in [20 C.F.R. § 416.967(b)] except he can frequently handle and finger. He must work in a moderate or quiet noise environment. He can understand, remember[,] and carry out simple instructions related to repetitive tasks. He can have occasional changes in a routine work setting. He can have occasional contact with the public, coworkers, and/or supervisors.[16]

Based on that RFC assessment, as well as Plaintiff's age, education, and work experience, the ALJ determined that, as of September 1, 2019, Plaintiff could perform a significant number of jobs in the national economy.[17]

Despite the Appeals Council's remand order that required the ALJ to provide appropriate rationale with specific references to record evidence in support of the assessed limitations regarding Plaintiff's dislocated left thumb,[18] the 2024 Decision on this subject recites the same words and same record references as the 2023 Decision.[19] The *only* difference between the two decisions is the ALJ's conclusion in the 2024 Decision that Plaintiff could engage in "light exertional work and can only frequently handle and finger."[20]

---

[15] AR 16-23.

[16] AR 24.

[17] AR 35-36.

[18] AR 196.

[19] *Compare* AR 31-32, *with* AR 180-81.

[20] AR 31.

Plaintiff appealed the ALJ's second adverse ruling, and, on November 19, 2024, the Appeals Council denied his appeal,[21] making the 2024 Decision final for purposes of judicial review.[22] Plaintiff then filed suit in this court seeking review of the Commissioner's final decision.[23]

## STANDARD OF REVIEW

This court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied."[24] The Commissioner's findings, "if supported by substantial evidence, shall be conclusive."[25] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance."[26] "In reviewing the ALJ's decision, [this court may] neither reweigh the evidence nor substitute [its] judgment for that of the [ALJ]."[27] "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed [are] grounds for reversal."[28]

To determine whether to terminate or continue a claimant's SSI benefits, the Commissioner must consider "if there has been any medical improvement in [the claimant's]

---

[21] AR 1-6.

[22] 42 U.S.C. § 1383(c)(3); 20 C.F.R. § 416.1481.

[23] ECF No. 2.

[24] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation modified).

[25] 42 U.S.C. § 405(g).

[26] *Lax*, 489 F.3d at 1084 (citation modified).

[27] *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006) (citation modified).

[28] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (citation modified).

impairment(s) and, if so, whether this medical improvement is related to [the claimant's] ability to work."[29] Medical improvement is defined as

> any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs, or laboratory findings associated with [the claimant's] impairment(s).[30]

Medical improvement is related to the ability to work "if there has been a decrease in the severity . . . of the impairment(s) present at the time of the most recent favorable medical decision and an increase in [the claimant's] functional capacity to do basic work activities" that allows the claimant "to engage in substantial gainful activity."[31] The Commissioner bears the burden of establishing both the claimant's work-related medical improvement and current ability to engage in substantial gainful activity.[32]

"The regulations provide a seven-step sequential evaluation process for determining whether to terminate [SSI] benefits . . . ."[33] At the first step, the Commissioner considers whether

---

[29] 20 C.F.R. § 416.994(b).

[30] *Id.* § 416.994(b)(1)(i).

[31] *Id.* § 416.994(b)(1)(iii).

[32] *Kirkes v. Astrue*, No. 06-1275-MLB, 2007 WL 2377083, at *2 (D. Kan. Aug. 10, 2007) ("If the Commissioner meets his burden of establishing that the claimant's medical condition has improved and that the improvement is related to the claimant's ability to work, the Commissioner must then demonstrate that the claimant is currently able to engage in substantial gainful activity. The burden of proof is on the Commissioner in a termination-of-benefits review." (citation modified) (citing *Hayden v. Barnhart*, 374 F.3d 986, 988 (10th Cir. 2004); *Glenn v. Shalala*, 21 F.3d 983, 987 (10th Cir. 1994))).

[33] *Garcia v. Barnhart*, No. CV 02-800 RLP, 2003 WL 27385263, at *2 (D.N.M. Apr. 17, 2003) (citing 20 C.F.R. § 416.994(b)(5)(i)-(vii)).

the claimant's impairments meet or equal a section of Appendix 1 of the relevant regulations ("Listed Impairment").[34] If the claimant's impairments meet or equal a Listed Impairment, the claimant continues to be disabled.[35] If not, the Commissioner moves to the next step.

At step two, the Commissioner considers whether there has been medical improvement, as defined above, in the claimant's conditions.[36] If there has been medical improvement in the claimant's conditions, the Commissioner proceeds to step three.[37] If not, the Commissioner proceeds to step four.[38]

The third step requires the Commissioner to consider whether the demonstrated medical improvement is related to the claimant's ability to work.[39] In other words, the Commissioner considers whether there has been an increase in the claimant's RFC based on the impairments that were present at the time of the claimant's most recent favorable medical determination.[40] If the medical improvement is related to the claimant's ability to work, the Commissioner proceeds to step five.[41] If it is not, then the Commissioner proceeds to step four.[42]

At step four—which is reached only if the Commissioner determines that there has been no medical improvement or that the medical improvement is not related to the claimant's ability

---

[34] 20 C.F.R. § 416.994(b)(5)(i); *see also* 20 C.F.R. § 404, Subpart P, Appendix 1.

[35] 20 C.F.R. § 416.994(b)(5)(i).

[36] *Id.* § 416.994(b)(5)(ii).

[37] *Id.*

[38] *Id.*

[39] *Id.* § 416.994(b)(5)(iii).

[40] *Id.*

[41] *Id.*

[42] *Id.*

to work—the Commissioner considers whether any of the exceptions to medical improvement contained in 20 C.F.R. § 416.994(b)(3) or (b)(4) apply.[43] If none of them applies, the claimant is still disabled.[44] If any of the first group of exceptions applies, the Commissioner proceeds to step five.[45] If any of the second group of exceptions applies, the claimant's disability has ended.[46]

At the fifth step—which is reached only if the Commissioner determines that there has been medical improvement related to the claimant's ability to work or if one of the first group of exceptions to medical improvement applies—the Commissioner considers whether all of the claimant's impairments in combination are severe.[47] If all the claimant's impairments in combination are deemed to be severe, the Commissioner proceeds to step six.[48] If not, the claimant is no longer disabled.[49]

The sixth step requires the Commissioner to consider whether the claimant can engage in substantial gainful activity.[50] More specifically, the Commissioner considers whether the claimant has the RFC to engage in work the claimant has done in the past.[51] If the claimant can

[43] *Id.* § 416.994(b)(5)(iv).

[44] *Id.*

[45] *Id.*

[46] *Id.*

[47] *Id.* § 416.994(b)(5)(v).

[48] *Id.*

[49] *Id.*

[50] *Id.* § 416.994(b)(5)(vi).

[51] *Id.*

perform such work, the claimant is no longer disabled.[52] If not, the Commissioner proceeds to step seven.

At step seven, the Commissioner considers whether the claimant can do other work considering the claimant's age, education, past work experience, and RFC.[53] If the claimant can perform other work, the claimant's disability has ended.[54] If not, the Commissioner will determine that the claimant is still disabled.[55]

## ANALYSIS

### I. The 2024 Decision Is Not Supported by Substantial Evidence as to Plaintiff's Dislocated Thumb.

The 2024 Decision is not supported by substantial evidence because the evidence concerning Plaintiff's dislocated left thumb does not come close to supporting the ALJ's conclusion that Plaintiff can "frequently handle and finger."[56] This error is not harmless, and Plaintiff is entitled to benefits. Each issue is discussed in order below.

#### A. The Evidence Cited in the 2024 Decision Actually Supports the Opposite Conclusion Than What the ALJ Reached.

Imagine the following. A person who lives in the contiguous 48 states, goes outside in the month of July. The sun is shining brightly overhead in the sky. The clock on the person's cell phone reads "10:30 a.m." People in the neighborhood are outside working in their yards using noisy power tools. The person then relays all these observations to another standing nearby and

---

[52] *Id.*

[53] *Id.* § 416.994(b)(5)(vii).

[54] *Id.*

[55] *Id.*

[56] AR 31.

concludes with: "Accordingly, it must be nighttime." Although the person observing all these facts has correctly observed and noted them, the conclusion derived from those facts clearly does not follow. That is exactly the problem with the 2024 Decision.

In the 2024 Decision, the ALJ correctly noted the facts regarding Plaintiff's dislocated left thumb. Specifically, the ALJ noted all the following:

- Plaintiff's left thumb includes a metacarpophalangeal joint dislocation with ulnar collateral ligament tear.[57]
- In two attempted reductions to remedy the problem "were unsuccessful."[58]
- When Plaintiff was discharged from a rehabilitation facility in 2006 for his traumatic brain injury, he "denied any pain or concern related to the [thumb] impairment."[59]
- In his 2009 psychological consultative exam, Plaintiff reported difficulty lifting because of his thumb and indicated that it remained untreated and dislocated.[60]

---

[57] *Id.*

[58] *Id.*

[59] *Id.* The ALJ cites Exhibit 1F/10 and 1F/8 to support this proposition. AR 31. However, neither page supports the ALJ's determination. Instead, the medical record notes that "[t]he ulnar collateral ligament is completely torn[,] and the other supporting structures are badly damaged." AR 714. Both 1F/10 and 1F/8 stated that Plaintiff was going to decide whether to obtain surgery. AR 712, 714.

[60] AR 31.

- The notes from his next consultative exam in 2015 stated that "'he still ha[d] a clearly dislocated thumb from the [motor vehicle accident] that has not yet been treated.'"[61]
- "Leading up to the relevant period, [Plaintiff] complained of chronic pain in his left thumb."[62]
- In May 2021, Plaintiff still needed surgery to repair his thumb.[63]
- At the hearing after the remand of the 2023 Decision, Plaintiff "testified to ongoing difficulties with gross and fin[e] manipulation."[64]
- Medical imaging "show[ed] a left thumb dislocation with a significant tear of the ulnar collateral ligament."[65]
- Two psychological consultative examiners observed that Plaintiff's "left thumb remained 'clearly dislocated.'"[66]

After reciting all this information, the ALJ concludes: "Accordingly, the undersigned finds that [Plaintiff] would be limited to light exertional work and can only *frequently* [(i.e., between 2.5 to 5.3 hours per day)] handle and finger."[67] This conclusion is unsupported by the very facts that the ALJ found.

---

[61] *Id*. (first alteration in original).

[62] *Id*.

[63] *Id*.

[64] *Id*.

[65] *Id*.

[66] AR 32.

[67] AR 31 (emphasis added).

Lest anyone think that this court is improperly substituting its own unspecialized judgment for the ALJ's, consider the following. The 2023 Decision made the same factual findings as the 2024 Decision and found that Plaintiff could perform jobs in the national economy all requiring frequent reaching and handling and occasional or frequent fingering.[68] But the Appeals Council remanded the 2023 Decision because, among other reasons, "There [was] no discussion regarding the impact of [Plaintiff]'s thumb injury on the performance of these jobs. Therefore, further consideration should be given to [Plaintiff]'s maximum [RFC]."[69] However, the 2024 Decision uses the exact same factual findings and record citations as the 2023 Decision[70] to conclude that Plaintiff can "frequently handle and finger."[71] In effect, the 2024 Decision reaches the same conclusion as the 2023 Decision regarding Plaintiff's thumb using the same facts, same words, and same record citations. If the 2023 Decision was faulty, so is the 2024 Decision on this point.

Nevertheless, the Commissioner contends that one small change in the 2024 Decision saves the day. Whereas the 2023 Decision provided that Plaintiff could engage in "medium exertional work,"[72] the 2024 Decision limits Plaintiff to "light exertional work."[73] This change is of no moment because light work has nothing to do with whether Plaintiff is capable of handling or fingering for the time allowed under a designation of "frequently." The term "light work"

---

[68] AR 196.

[69] *Id.*

[70] *Compare* AR 31-32, *with* AR 180-81.

[71] AR 31.

[72] AR 180.

[73] AR 31.

> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the Commissioner] determines that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.[74]

This definition does not mention much less specify whether a person can handle or finger anything "frequently." Thus, a "light work" RFC does nothing to alter the fact that the ALJ found that Plaintiff could "frequently" finger without any factual basis for doing so even after the Appeals Council remanded the decision to remedy that very error, among others. Consequently, the ALJ's RFC is not supported by substantial evidence.[75]

---

[74] 20 C.F.R. § 416.967(b).

[75] The Commissioner also contends that the ALJ's determination regarding Plaintiff's thumb is supported by substantial evidence because elsewhere in the 2024 Decision, the ALJ mentions that Plaintiff can play the guitar and video games, cook, and do laundry. ECF No. 26 at 17. Even assuming the ALJ found these things persuasive in his reasons for finding frequent fingering, these facts do not constitute substantial evidence. Nothing in the record suggests that the Plaintiff plays guitar or video games to the extent necessary to support a finding of frequent fingering. Indeed, courts look with askance at this type of argument to support substantial evidence especially considering the facts the ALJ actually found in the RFC determination in the 2024 Decision. *King v. Barnhart*, 114 F. App'x 968, 972 (10th Cir. 2004) (concluding that the ALJ improperly discounted treating doctor's opinion that claimant's depression and bipolar disorder were disabling by citing claimant's housework, cooking, shopping, watching television, visiting family, and other activities); *Oslin v. Barnhart*, 69 F. App'x 942, 948 (10th Cir. 2003) ("[M]inimum daily activities do not establish [that the plaintiff] can work on a consistent basis."); *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) ("[S]poradic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity." (citation modified)).

B. The ALJ's Error Is Not Harmless, and Plaintiff Is Entitled to Benefits.

The ALJ's error is not harmless because all the jobs that he found Plaintiff could perform in the national economy require frequent handling and occasional to frequent fingering.[76] Thus, Plaintiff is unable to perform all the jobs that the ALJ found available in the national economy.

Whether the court should remand to the Commissioner to make a third attempt at a supportably disability determination or award benefits now is an issue that the court considers with caution. The court has discretion to remand or to award benefits.[77] However, in exercising this discretion, this court must consider "the length of time the matter has been pending," and "whether or not[,] given the available evidence, remand for additional fact-finding would serve any useful purpose but would merely delay the receipt of benefits."[78] Both factors support an award of benefits.

First, the most recent saga over Plaintiff's continued receipt of benefits has been going on since September 1, 2019, when the Social Security Administration initially determined that Plaintiff was no longer eligible for benefits. Six years is a long time for Plaintiff to finally learn the fate of his benefits.[79]

---

[76] ECF No. 18 at 10.

[77] *Ragland v. Salala*, 992 F.2d 1056, 1060 (10th Cir. 1993).

[78] *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006) (citation modified).

[79] *Huffman v. Astrue*, 290 F. App'x 87, 89-90 (10th Cir. 2008) ("Six years have passed since [the plaintiff] filed for benefits . . . . The case has already been reversed and remanded once[,] and our resolution of this appeal would require yet further proceedings. . . . Given the lengthy delay that has occurred from the Commissioner's erroneous disposition of the matter, we exercise our discretion to award benefits.").

Second, this case appeals the Commissioner's second bite at the decision-making apple, and remanding so the Commissioner can have a third bite will take even more time. In both decisions, the Commissioner was able to find only jobs that Plaintiff cannot do. Given the six years that have passed, this court is not going to give the Commissioner a third opportunity to try again. Therefore, the court orders an award of benefits.[80]

## ORDER

For the reasons stated above, the Commissioner's decision is REVERSED with an ORDER to award benefits.[81]

IT IS SO ORDERED.

DATED this 23rd day of January 2026.

BY THE COURT:

JARED C. BENNETT
United States Magistrate Judge

[80] *Id.*

[81] Because the court reverses and awards benefits based on Plaintiff's limitations with his left thumb, the court does not address the other issues Plaintiff raises.